# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | | |
|---|---|---|---|---|---|---|
| $73,000.00 | 05-05-2003 | 05-05-2010 | 3645010458 | 74 | page 1 | of 3 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Halibut King Charters, Inc.
P.O. BOX 1687
HOMER, AK 99603

**Lender:** Wells Fargo Bank Alaska, National Association
Homer Branch
301 W. Northern Lights
Anchorage, AK 99503-2662

---

Principal Amount: $73,000.00    Initial Rate: 6.250%    Date of Note: May 5, 2003

**PROMISE TO PAY.** Halibut King Charters, Inc. ("Borrower") promises to pay to Wells Fargo Bank Alaska, National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seventy-three Thousand & 00/100 Dollars ($73,000.00), together with interest on the unpaid principal balance from May 5, 2003, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the index, Borrower will pay this loan in 83 principal payments of $869.05 each and one final principal and interest payment of $873.37. Borrower's first principal payment is due June 5, 2003, and all subsequent principal payments are due on the same day of each month after that. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 5, 2003, with all subsequent interest payments to be due on the same day of each month after that. Borrower's final payment due May 5, 2010, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the floating rate equal to the Prime Rate set from time to time by Wells Fargo Bank, National Association ("Wells Fargo") that serves as the basis upon which effective rates of interest are calculated for those loans making reference thereto (the "index"). The index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each time the index changes. Each change in the Prime Rate of interest hereunder shall become effective on the date each Prime Rate change is announced within Wells Fargo. The "initial rate" is the rate per annum which Borrower and Lender agree shall be the initial rate of this Note, and the "index currently" is the index amount upon which said initial rate is based; they do not necessarily reflect the index in effect on the date of this Note. Borrower understands that Lender may make loans based on other rates as well. The index currently is 4.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.000 percentage points over the Index, resulting in an initial rate of 6.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Wells Fargo Bank Alaska, National Association, Alaska BBG Loan Operations, 301 West Northern Lights Anchorage, AK 99503.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 6.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount. Borrower is personally obligated and fully liable for the amount due under this Note. Lender, at Lender's sole option, has the right to sue on this Note and obtain a personal judgment against Borrower for satisfaction of the amount due under the Note either before or after the exercise by Lender of any other right or remedy it may have to proceed against any of the collateral securing this Note.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Alaska. This Note has been accepted by Lender in the State of Alaska.

Case 3:06-cv-00013-TMB   Document 1-2   Filed 01/13/2006   Page 2 of 3

Attachment Number 1-2

PROMISSORY NOTE
(Continued)

Loan No: 3645010458

Page 2

page 2 of 3

checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

STATUTE OF LIMITATIONS. The limitation period for enforcing this agreement and each related document is ten (10) years from the date of discovery by lender, of borrower's breach or act of default.

ARBITRATION AGREEMENT. Binding Arbitration. Lender and each party to this agreement hereby agree, upon demand by any party, to submit any Dispute to binding arbitration in accordance with the terms of this Arbitration Program. A "Dispute" shall include any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to this Agreement or any related agreement incorporating this Arbitration Program (the "Documents"), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents or injuries of any kind whatsoever relating to or involving Business Banking, Community Banking, or any successor group or department of Lender. DISPUTES SUBMITTED TO ARBITRATION ARE NOT RESOLVED IN COURT BY A JUDGE OR JURY.

Governing Rules. Any arbitration proceeding will (i) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between the parties; and (ii) be conducted by the American Arbitration Association ("AAA"), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's commercial dispute resolution procedures, unless the claim or counterclaim is at least $1,000,000.00 exclusive of claimed interest, arbitration fees and costs in which case the arbitration shall be conducted in accordance with the AAA's optional procedures for large, complex commercial disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes to be referred to, as applicable, as the "Rules"). If there is any inconsistency between the terms hereof and the Rules, the terms and procedures set forth herein shall control. Arbitration proceedings hereunder shall be conducted at a location mutually agreeable to the parties, or if they cannot agree, then at a location selected by the AAA in the state of the applicable substantive law primarily governing the Credit. Any party who fails or refuses to submit to arbitration following a demand by any other party shall bear all costs and expenses incurred by such other party in compelling arbitration of any Dispute. Arbitration may be demanded at any time, and may be compelled by summary proceedings in Court. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief. The arbitrator shall award all costs and expenses of the arbitration proceeding. Nothing contained herein shall be deemed to be a waiver by any party that is a bank of the protections afforded to it under 12 U.S.C. °91 or any similar applicable state law.

No Waiver of Provisional Remedies, Self-Help and Foreclosure. The arbitration requirement does not limit the right of any party to (i) foreclose against real or personal property collateral; (ii) exercise self-help remedies relating to collateral or proceeds of collateral such as setoff or repossession; or (iii) obtain provisional or ancillary remedies such as replevin, injunctive relief, attachment or the appointment of a receiver, before during or after the pendency of any arbitration proceeding. This exclusion does not constitute a waiver of the right or obligation of any party to submit any Dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in sections (i), (ii) and (iii) of this paragraph.

Arbitrator Qualifications and Powers. Any arbitration proceeding in which the amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who shall not render an award of greater than $5,000,000.00. Any Dispute in which the amount in controversy exceeds $5,000,000.00 shall be decided by majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations. Every arbitrator must be a practicing attorney or a retired member of the state or federal judiciary, in either case with a minimum of ten years experience in the substantive law applicable to the subject matter of the Dispute. The arbitrator will determine whether or not an issue is arbitratable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator shall resolve all Disputes in accordance with the applicable substantive law and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator shall also have the power to award recovery of all costs and fees, to impose sanctions and to take such other action as the arbitrator deems necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, the applicable State Rules of Civil Procedure, or other applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

Discovery. In any arbitration proceeding discovery will be permitted in accordance with the Rules. All discovery shall be expressly limited to matters directly relevant to the Dispute being arbitrated and must be completed no later than 20 days before the hearing date and within 180 days of the filing of the Dispute with the AAA. Any requests for an extension of the discovery periods, or any discovery disputes, will be subject to final determination by the arbitrator upon a showing that the request for discovery is essential for the party's presentation and that no alternative means for obtaining information is available.

Miscellaneous. To the maximum extent practicable, the AAA, the arbitrators and the parties shall take all action required to conclude any arbitration proceeding within 180 days of the filing of the Dispute with the AAA. The resolution of any Dispute shall be determined by a separate arbitration proceeding and such Dispute shall not be consolidated with other disputes or included in any class proceeding. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. If more than one agreement for arbitration by or between the parties potentially applies to a Dispute, the arbitration provision most directly related to the documents between the parties or the subject matter of the Dispute shall control. This arbitration provision shall survive termination, amendment or expiration of any of the documents or any relationship between the parties.

CONSENT TO SELL LOAN. The parties hereto agree: (a) Lender may sell or transfer all or part of this loan to one or more purchasers, whether related or unrelated to Lender; (b) Lender may provide to any purchaser, or potential purchaser, any information or knowledge Lender may have about the parties or about any other matter relating to this loan obligation, and the parties waive any rights to privacy it may have with respect to such matters; (c) the purchaser of a loan will be considered its absolute owner and will have all the rights granted under the loan documents or agreements governing the sale of the loan; and (d) the purchaser of a loan may enforce its interests irrespective of any claims or defenses that the parties may have against Lender.

COLLECTION FROM DEPOSIT ACCOUNT. Lender may collect principal, interest, fees, charges, and other amounts due under this Note by charging Borrower's primary deposit account as specified in the "Disbursement Request and Authorization" executed by Borrower in connection with this Note for such amounts as they become due, or such other deposit account of Borrower as Borrower may otherwise designate. Should there be insufficient funds in said account to pay such sums when due, the full unpaid amount of such sums shall be immediately due and payable by Borrower.

LOAN FEE AUTHORIZATION. Borrower shall pay to Lender any and all fees as specified in the "Disbursement Request and Authorization" executed by Borrower in connection with this Note. Such fees are non-refundable and shall be due and payable in full immediately upon Borrower's execution of this Note.

FINANCIAL STATEMENTS. Borrower agrees to provide to Lender, upon request, financial statements prepared in a manner and form acceptable to Lender, and copies of such tax returns and other financial information and statements as may be requested by Lender. Borrower shall also furnish such information regarding Borrower or the Collateral as may be requested by Lender. Borrower warrants that all financial statements and information provided to Lender are and will be accurate, correct and complete.

ADDITIONAL SECURITY. Notwithstanding anything to the contrary in this or any related agreement, to further secure the indebtedness and obligations of the Note and related loan documents, Borrower pledges and grants to Lender a contractual right of offset and security interest in Borrower's accounts with Lender and Borrower's accounts with any Wells Fargo Affiliate, whether checking, savings, investment, or some other account, including without limitation, accounts held jointly with others and accounts opened in the future, excluding however all IRAs, Keogh accounts, and trust accounts to the extent a security interest would be invalid or prohibited by law. As used herein, "Wells Fargo Affiliate" means any present or future subsidiary of Wells Fargo & Company, and any subsidiary thereof, and any successors of such financial service companies.

APPLICATION OF PAYMENTS. Notwithstanding the application of payment provided in the Payment section of this Note, unless otherwise agreed, all sums received from Borrower may be applied to interest, fees, principal, or any other amounts due to Lender in any order at Lender's sole discretion. If a final payment amount is set out in the Payment section of this Note, Borrower understands that it is an estimate, and that the actual final payment amount will depend upon when payments are received and other factors.

ADDITIONAL EVENTS OF DEFAULT. If the Borrower is a partnership, in addition to the Events of Default described above, the following shall also be an Event of Default: (a) the resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in any Borrower which is a partn[ership]; or (b) if any general partner of Borrower is gener[ally] not paying its debts as they become due.

FURTHER ASSURANCES. The parties [...] agree to do all things deemed necessary by Le[nder ...] in order to fully document the loan evidenced by this Note and any related agreement[s ...] and will fully cooperate concerning th[e] execution [and] delivery of security agreements, stock powers,

**PROMISSORY NOT**
Loan No: 3645010458          (Continued)      page _3_ of _3_                    Page 3

instructions and/or other documents pertaining to any collateral intended to secure the indebtedness. The undersigned agree to assist in the cure of any defects in the execution, delivery or substance of the Note and related agreements, and in the creation and perfection of any liens, security interests or other collateral rights securing the Note.

**CONSENT TO SELL LOAN.** The parties hereto agree: (a) Lender may sell or transfer all or part of this loan to one or more purchasers, whether related or unrelated to Lender; (b) Lender may provide to any purchaser, or potential purchaser, any information or knowledge Lender may have about the parties or about any other matter relating to this loan obligation, and the parties waive any rights to privacy it may have with respect to such matters; (c) the purchaser of a loan will be considered its absolute owner and will have all the rights granted under the loan documents or agreements governing the sale of the loan; and (d) the purchaser of a loan may enforce its interests irrespective of any claims or defenses that the parties may have against Lender.

**CREDIT BUREAU INQUIRIES.** The parties hereto, and each individual signing below in a representative capacity, agree that Lender may obtain business and/or personal credit reports and tax returns on each of them in their individual capacities.

**EXTENSION AND RENEWAL.** Lender may, at Lender's discretion, renew or extend this Note by written notice ("Renewal Notice") to Borrower. Such renewal or extension shall be effective as of the maturity date of this Note, and may be conditioned among other things on modification of Borrower's obligations hereunder, including but not limited to a decrease in the amount available under this Note, an increase in the interest rate applicable to this Note and/or payment of a fee for such renewal or extension. In addition, Lender may increase the principal amount available under the Note at any time. Borrower shall be deemed to have accepted the terms of each Renewal Notice, including any notice of an increase in availability, if Borrower does not deliver to Lender written rejection of such renewal or extension within 10 days following the date of such Renewal Notice, or if Borrower draws additional funds following receipt of such Renewal Notice. After any renewal or extension of Borrower's obligations under this Note, the term "maturity date" as used in this Note shall mean the new maturity date set forth in the Renewal Notice. This Note may be renewed and extended repeatedly in this manner.

**FACSIMILE AND COUNTERPART.** This document may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document. An electronic transmission or other facsimile of this document or any related document shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

**DEFAULT RATE.** At Lender's option and without prior notice, upon default or at any time during the pendency of any event of default under this Note or any related loan documents, Lender may increase the interest rate applicable to the Note by four percent (4.0%) (the "Default Rate"), not to exceed the maximum lawful rate. (If the applicable rate is a floating or variable rate, then the Default Rate will be a varying rate equal to the sum of the normally applicable index and spread, plus four percent.) The Default Rate shall remain in effect until the default has been cured and that fact has been communicated to and confirmed by Lender. Lender shall give written notice to Borrower of Lender's imposition of the Default Rate. If the Note is not paid at maturity, Lender may impose the Default Rate from the maturity date to the date paid in full without notice. Lender's imposition of the Default Rate shall not constitute an election of remedies or otherwise limit Lender's rights concerning other remedies available to Lender as a result of the occurrence of an event of default. In the event of a conflict between the provisions of this paragraph and any other provision of this Note or any related agreement, the provisions of this paragraph shall control. If a default rate is prohibited by applicable law, then the interest rate applicable after default or maturity shall be the prematurity rate which would be applicable in the absence of any default.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

HALIBUT KING CHARTERS, INC.

By: _/s/ Donald R. Doan_
Donald R. Doan, President of Halibut King Charters, Inc.

LASER PRO Lending, Ver. 5.21.90.002 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - AK H:\WIN\APPS\LPO\CFI\LPL\D20.FC TR-6879 PR-150

EXHIBIT 4
PAGE 3 OF 3 PAGES